**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RAYMOND GAGNE,

      Petitioner,

v.                                                                    Case No. 8:14-cv-554-T-36TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Raymond Gagne, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions entered in 2005 by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.  Respondent filed a response (Dkt. 7), which concedes the petition's timeliness.  Gagne did not file a reply.  Upon review, the petition must be denied.

## PROCEDURAL HISTORY

Gagne challenges his convictions in four cases.  He faced a total of four counts of robbery with a firearm, one count of armed burglary of a structure, three counts of dealing in stolen property, two counts of giving false information to a pawn broker, one count of burglary of a structure involving assault or battery, and one count of throwing a deadly missile into a building.

Gagne entered open pleas of guilty to these offenses.  The court sentenced him to

an overall term of thirty years in prison, followed by ten years of probation. (Dkt. 7, Ex. 4.)[1] The court imposed ten-year minimum mandatory terms under § 775.087(2)(a)(1), Fla. Stat., on the charges of robbery with a firearm and armed burglary. (Dkt. 7, Ex. 4, pp. 37, 40, 170, 227.)[2]

The state appellate court *per curiam* affirmed the judgments and sentences. (Dkt. 9, Ex. 8.) Gagne filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and a motion to amend. (Dkt. 9, Exs. 9, 10.) The state court denied one of Gagne's claims and directed the State to respond to other claims. (Dkt. 9, Ex. 11.) Upon receiving the State's response (Dkt. 9, Ex. 12) and Gagne's reply (Dkt. 9, Ex. 13), the state court required another response of the State (Dkt. 9, Ex. 14). Subsequently, the State court summarily denied a number of Gagne's claims, and conducted an evidentiary hearing on two claims. (Dkt. 9, Exs. 16, 17.) Following the evidentiary hearing, the state court denied the rest of Gagne's claims. (Dkt. 9, Ex. 18.) The state appellate court *per curiam* affirmed the denial. (Dkt. 9, Ex. 21.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

[1] Gagne's judgment and sentence for count three of case number 04-13964, burglary of a structure with assault or battery, was later vacated. (Dkt. 9, Ex. 5.)

[2] Section 775.087(2)(a)(1), Fla. Stat., requires a minimum term of ten years in prison if an offender commits one of the offenses enumerated in that section, which include robbery and burglary, and actually possessed a firearm or destructive device during the commission of the offense.

§ 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . ") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Gagne's postconviction motion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S.

906 (2003).  *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Review of the state court decision is limited to the record that was before the state court.  *Pinholster,* 131 S. Ct. at 1398.

Gagne bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice.  Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."  *Id.* at 690.  However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.*  Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.*

Gagne must demonstrate that counsel's alleged errors prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

With respect to his counts involving a firearm,[3] Gagne asserts that he merely possessed a BB gun and did not qualify for the ten year minimum mandatory term for possession of a firearm. He argues that counsel was ineffective for failing to file a motion to suppress on this basis. Gagne further asserts that counsel was aware he only possessed a BB gun and therefore knew of a viable defense. Gagne states that counsel misadvised him to enter the plea, and that had counsel informed him of this defense, he would have insisted on going to trial.

As a preliminary matter, the record supports a finding that Gagne's pleas were

---

[3] In his postconviction motion, Gagne raised this claim with respect to case number 04-13966, which involved two counts of robbery with a firearm. (Dkt. 9, Ex. 9, p. 43; Ex. 10, p. 361.) However, Gagne's three cases that involved a firearm were addressed in the testimony at the evidentiary hearing that the state court cited and relied upon in its order. The Court construes the state court's decision as involving these three cases.

voluntarily entered.  The record reflects the following at the change of plea hearing:

THE COURT:  Okay.  Next you have several cases with new offenses pending as follows: In Case 04-13966, you're charged with two counts of Robbery with a Firearm.  Each is a first-degree felony punishable by Life in prison.  Does 10-20-LIFE apply as to Gagne?

[STATE]: Judge, on both cases 10-20-LIFE would apply to Mr. Gagne, yes, sir.

THE COURT: Okay.  This - - these offenses come under 10-20-LIFE, which means that you score a minimum mandatory of 10 years in prison up to a maximum of Life in Florida State Prison.

In Case 04-13975 you're charged with one count of Throwing a Deadly Missile into a building, that carries a penalty of up to 15 years in prison.

In Case 04-13965, you're charged with one count of Robbery with a Firearm, that carries - - that's a first-degree felony which carries a punishment penalty of up to Life in Florida State Prison.  It likewise carries a ten-year minimum mandatory.  Count 2 charges you with Dealing in Stolen Property, that carries up to 15 years in prison.  Count 3 charges you with Giving False Information to a Pawn Broker, that carries up to five years in prison.  Count 4 charges you with Dealing in Stolen Property, that carries up to 15 years in prison.  And Count 5 charges you, again, with False Information to a Pawnbroker, that carries up to five years in prison.

In Case 04-13964, you're charged with one count - - Count 1, Robbery, that carries up to Life in Florida State Prison and it carries a mandatory ten-year, day-for-day.  Count 2 charges you with Armed Burglary of a Structure.  Is that - -is that a 10-20-LIFE, Armed Burglary?

[STATE]: Judge, the Armed Burglary on that particular case, yes, sir - - you're talking Count 2 on 964, sir?

THE COURT: Yes, sir.

[STATE]:      Yes, sir, it is.

THE COURT: All right.  That likewise carries a mandatory ten years in prison day-for-day.  Count 3 is - - charges Burglary of a Structure involving Assault or Battery, that carries up to Life in Florida State Prison.  And Count 4 charges you with Dealing in Stolen Property, that carries up to 15 years in Florida State Prison.

Now, your cases are set for jury trial Monday also, but your lawyer tells me that you've made a decision to plead guilty to each of these offenses; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And these are what we call open pleas, which means there's no deal between you and the State as to what sentence I will impose, is that your understanding?

THE DEFENDANT: Yes, sir.

THE COURT: Now, he was over 21 at the times of these crimes; is that correct?

[DEFENSE COUNSEL]: Under 21, Judge.

. . .

THE COURT: So he does qualify as a Youthful Offender.

[DEFENSE COUNSEL]: Yes, he does, Judge.

[STATE]: Potentially, sir.

THE COURT: Potentially.

[STATE]: Yes, sir.

THE COURT: So you do qualify for potential Youthful Offender sentencing, which means that if I do that, the maximum sentence I could impose would be six years; however, there's no assurance or guarantee that I would sentence you as a Youthful Offender.  If I sentence you as an adult so to speak not as a Youthful Offender, then I'm constrained to - - the minimum sentence I could impose would be ten years day-for-day; and, of course, I could sentence you to as much as Life.  Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you don't have to plead guilty, but that you have the absolute right to plead not guilty and to have a separate jury trial for each case number next week.  Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty, you give up your right to have each of those jury trials and you give up any right to appeal.  Is this what you want to do, plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: If these cases were to go to jury trial, you and your lawyer together at each of those trials would have the right to confront your accusers in court.  You would have the right to summon witnesses to come into court to testify on your behalf; and if you wished to do so, you could be a witness yourself at your trials.  Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty, you're going to give up all of those rights. Are you satisfied with the advice given to you by your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: As you stand here now, are you under the influence of any drugs, medicine or alcohol?

THE DEFENDANT: No, sir.

. . .

THE COURT: I'll find that there are sufficient facts, that your pleas are knowingly and voluntarily entered and I will accept your pleas.

(Dkt. 9, Ex. 1, pp. 387-94.)

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable,

"the representations of the defendant [and] his lawyer [at a plea hearing] . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The trial court reviewed all of the charges, possible maximum penalties, and minimum mandatory penalties.  The colloquy shows that Gagne knew he was pleading open to charges carrying a possible life sentence, with no guarantee of the court imposing any particular sentence.  Additionally, the record supports the conclusion that Gagne understood the rights he waived by entering his pleas and that he wanted to enter the pleas.  He does not show that his statements at the change of plea hearing were false.  Thus, the record reflects that Gagne knowingly and voluntarily entered his pleas.

Generally, entry of a voluntary plea forecloses allegations of constitutional violations that occurred prior to the plea.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973)  ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("[T]he general rule [is] that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

A plea does not bar review of a claim of ineffective assistance of counsel to the extent the alleged ineffectiveness bears upon the voluntariness of the plea itself. *See Hill*, 474 U.S. at 56-57 (defendant who enters guilty plea upon advice of counsel can only attack the voluntary nature of the plea by showing that counsel's advice was not within the range of competence demanded of attorneys); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."); *Stano,* 921 F.2d at 1150-51 ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the plea.") (citation omitted).

In Ground One, Gagne does not challenge the voluntariness of his plea.  His claim is therefore barred by *Tollett*.  Even liberally construing his claim as involving the voluntary nature of the plea, however, Gagne shows no entitlement to relief.

Gagne testified at the evidentiary hearing to his understanding that "under the Florida Statutes, a BB gun is not considered a firearm."  (Dkt. 9, Ex. 17, p. 577.)  He testified that pleading to the offenses as charged exposed him to a possible life sentence and in fact resulted in ten year minimum mandatory terms for the firearm charges.  (*Id.*)  Gagne further testified that, if he had known of the possibility of having the charges reduced, he would have gone to trial.  (*Id.*)

Counsel testified with respect to all three of Gagne's cases that involved the minimum mandatory firearm sentence.  He told the court that Gagne's cases were "difficult" for the defense, and that there was no offer from the State.  (*Id.*, p. 584.)  First, counsel described Gagne's case involving offenses at a jewelry store, for which Gagne was

charged in relevant part with robbery with a firearm and armed burglary of a structure.  He testified that the evidence against Gagne included fingerprints, the store clerk's "one hundred percent positive ID in a photopack of Mr. Gagne," and the fact that Gagne pawned items taken from the store.  (*Id.*, pp. 584-85.)  Counsel's cross-examination suggests that a BB gun may have initially been used.  (*Id.*, pp. 588-89.)  But counsel testified "[t]he evidence was that Mr. Gagne jumped over the counter, removed a .38 caliber pistol from the back pocket of the clerk, who had become suspicious and armed herself, so now he's armed with a weapon."  (*Id.*, p. 584.)  Therefore, counsel testified, he believed the issue of a BB gun "goes out the window in that case."  (*Id.*, p. 589.)  Counsel further testified that he believed the elements of burglary were established once Gagne jumped over the counter into an area not open to the public.  (*Id.*, pp. 584-85.)[4]

Counsel also addressed Gagne's case involving a robbery of two women outside of a WalMart store, which appears to have involved two counts of robbery with a firearm. Counsel explained that evidence included the store's surveillance footage, which showed the women having a conversation with several men and showed Gagne, and "a hundred

---

[4] Burglary is defined in relevant part as:

1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or

2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
. . .

b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or

c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

§ 810.02(1)(b), Fla. Stat.

percent ID, photopack." (*Id.*, p. 585, 586.) Counsel testified that one of the victims testified in her deposition that the gun was cocked and placed to the back of her head. (*Id.*, pp. 585-86.) Counsel stated that he was not familiar with any BB gun that can be cocked. (*Id.*, p. 586.)

Counsel testified that in the third case, which appears to have involved one count of robbery with a firearm, the victim described "the intruders that came into his house as being armed with a, he described it as a silver semi-automatic with black handles." (*Id.*) Counsel testified that when the home of Gagne's co-defendant's grandparents was searched, "they recovered a black pellet gun that was in the shape of a semi-automatic, but that was a black gun, not a silver gun. So there was some evidence in that case to support the fact that a firearm was present there as well." (*Id.*)

Accordingly, counsel testified, "there wasn't a motion to suppress in my opinion," and "[w]hether or not a firearm is present was a question of fact." (*Id.*, p. 587.) Counsel further testified that he reviewed with Gagne all the evidence and depositions and discussed available options. (*Id.*) On cross-examination, counsel agreed that a potential strategy would have been to "only plead [Gagne] to robbery with a deadly weapon, or robbery-weapon." (*Id.*, p. 589.) But counsel testified that in this situation the State could have chosen to proceed to trial on offenses as charged, and counsel thought "trial didn't seem to be a viable option, in my opinion in this case, because the evidence was so bad." (*Id.*) Thus, counsel determined that it was "a better strategy to have the client admit his guilt, try to show some remorse, put mitigation in, and during sentencing, and ask for leniency to the Judge. That seemed to be the better course of action to me." (*Id.*)

The state court denied this claim after the evidentiary hearing:

After reviewing the allegations, the testimony, evidence, and arguments presented at the March 7, 2012 evidentiary hearing, the court files, and the record, the Court finds "[w]hether a BB gun which resembles a 9 mm semi-automatic handgun, according to witnesses, can be considered a deadly weapon when used in a bank robbery, is a question of fact for the jury." *June v. State*, 717 So.2d 191, 191 (Fla. 5th DCA 1998). Therefore, the Court finds whether the gun used in this case was a firearm or a BB gun is a question of fact for the jury.

Additionally, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds based on [counsel]'s testimony he did not believe there was a basis for a motion to suppress because whether the firearm was really a BB gun was a question of fact for the jury and not the subject of a motion to suppress. Consequently, the Court finds Defendant cannot demonstrate that [counsel] acted deficiently when there was no basis to file the alleged motion to suppress as the question of whether the firearm was really a BB gun was a question of fact for the jury and not the subject of a motion to suppress. **As such, no relief is warranted upon the allegations in claim one.**

(Dkt. 9, Ex. 18, p. 511) (emphasis in original).

Gagne fails to show entitlement to relief on this ground. The state court found counsel's testimony to be credible. This determination is presumed to be correct. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].")", *cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).")", *cert. denied*, 513 U.S. 1161 (1995). Gagne does not overcome the presumption of correctness.

Moreover, the state court's determination is supported by the record. Counsel's testimony contains no indication that he thought a motion to suppress would be viable; rather, he believed that whether Gagne possessed a firearm was a question of fact for the

jury.  Accordingly, the state court determined that counsel was not ineffective for failing to file a motion to suppress when there was no basis to do so.  In addition, counsel thought the best strategy given the facts of Gagne's cases was to enter a plea and seek leniency at sentencing.[5]  Given the circumstances with which counsel was faced at the time, Gagne fails to show that this tactical choice was unreasonable.  *See Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001) ("Moreover, '[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)).  Gagne fails to establish "'that no competent counsel would have taken the action that his counsel did take.'" *Id.* (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)).

Gagne does not show that counsel was ineffective for the reasons alleged in Ground One. He fails to show that the state court's decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.  Ground One warrants no relief.

**Ground Two**

Ground Two concerns the charge of armed burglary of a structure in case number 04-13964, which occurred at a jewelry store.  It appears from the record that Gagne jumped over the store counter during the offense. Gagne asserts that counsel was ineffective for

---

[5] The record reflects that at the sentencing hearing, counsel submitted a forensic psychological evaluation of Gagne, three previous evaluations of Gagne, newspaper articles concerning physical abuse at a youth detention center in New Hampshire where Gagne previously was located, and letters from Gagne's aunt and mother.  (Dkt. 9, Ex. 3, pp. 266-68.)  Counsel also called Gagne's mother, who testified about numerous familial issues, as well as Gagne's diagnoses, involvement in the juvenile justice system, possible past abuse, and drug use.  (*Id.*, pp. 269-85.)  Counsel submitted letters from Gagne apologizing to the victims. (*Id.,* p. 285.)  Gagne also spoke to the court and apologized.  (*Id.*, pp. 310-11.)  Finally, counsel asked for youthful offender sentencing, or if the court found such a sentence to be inappropriate, for leniency under the sentencing guidelines.  (*Id.*, p. 309.)

not adequately investigating the offense of armed burglary "and the applicable and viable defense of 'consent'" because he was permitted to be in the store. (Dkt. 1, p. 7.)  Gagne argues that counsel's ineffective assistance in failing to investigate resulted in a due process violation because he was "convicted of a crime that did not occur." (Dkt. 1, p. 8.)

Gagne raises no specific challenge to the voluntariness of his plea.  His voluntary plea forecloses allegations of constitutional violations prior to the entry of the plea. *See Tollett*, 411 U.S. at 267.  Even liberally interpreting the claim as involving the voluntary nature of the plea, however, Gagne does not show entitlement to relief.  The state court conducted an evidentiary hearing on Gagne's claim of ineffective assistance of counsel, after which it denied this claim:

> At the hearing, Defendant testified earlier that day, the victim granted him entry into the jewelry store in Brandon.  He admitted he later entered the jewelry store again whereby she pressed the buzzer to let him in.  Therefore, he admitted the consent factor should have reduced the charge against him.  He testified, "I would have went to trial, because if, an element of a burglary is a forceful entry, how can I be found guilty for burglary?  So therefore, I feel like maybe the charge would have been dropped or dismissed, or I could have beaten it - - .. - - at trial."  He further testified, "[t]here's a possibility I could have been found not guilty... Or guilty of a lesser included offense."
>
> On cross-examination, when asked about whether the jewelry store clerk's alleged consent to Defendant's entrance might have mitigated or reduced the charge, [counsel] responded as follows:
>
>> [COUNSEL]: I don't believe so.  I've researched the case law.  I had a case where a, one of my clients entered a liquor store, which is open to the public.  Once he jumped behind the counter with a gun, stuck a gun to the clerk's head, the case law says he's now entered a place which is not open to the public, even though the store itself was, and it meets the elements for a burglary.  So in my opinion, whether he was buzzed in or walked into a public place, once you get behind the counter, the case law supports the fact that the elements of a burglary have been met, if there's an intent to commit a crime.

After reviewing the allegations, the testimony, evidence, and arguments presented at the March 7, 2012 evidentiary hearing, the court files, and the record, the Court finds "if a defendant can establish that the premises were open to the public, then this is a complete defense." *Miller v. State*, 733 So.2d 955, 957 (Fla. 1998); *see Harrell v. State*, 765 So.2d 962, 963 (Fla. 3d DCA 2000). However, the Court finds "this rule is subject to the qualification that if in committing the crime, the defendant entered a portion of the premises which was not open to the public (which can include the area behind the counter), then a burglary has been committed." *Johnson v. State*, 3 So.3d 412, 415 (Fla. 3d DCA 2009); *see also Johnson v. State*, 786 So.2d 1162, 1163 (Fla. 2001).

The Court further finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds based on [counsel]'s testimony, although Defendant may have initially had the jewelry store clerk's consent to enter the store, once Defendant entered the area behind the counter, a portion of the premises not open to the public, Defendant committed a burglary. Consequently, the Court finds Defendant cannot demonstrate that [counsel] acted deficiently when [counsel] investigated the alleged offense and the elements of the alleged offense, and found consent was not an affirmative defense available to Defendant based on the fact that he entered the non-public area behind the counter. **As such, no relief is warranted upon the allegations in claim two.**

(Dkt. 9, Ex. 18, pp. 512-14) (court's record citations omitted) (emphasis in original).

Gagne does not show entitlement to relief. Again, the state court's determination that counsel's testimony was more credible is given deference. *Baldwin*, 152 F.3d at 1316; *Devier*, 3 F.3d at 1456. The record reflects that counsel believed the proposed defense was not viable based on the facts of this case because Gagne entered an area of the store not open to the public. The state court found that, in accordance with state law interpreting the elements of burglary, counsel was not ineffective for not pursuing such a defense. This determination must be given deference in this federal habeas petition. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See Will v. Sec'y, Dep't of Corr.*278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal*

constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvora v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).   Furthermore, counsel cannot be deemed ineffective for failing to file a meritless claim.   *See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir.2002) (counsel was not ineffective for failing to raise claims that clearly lacked merit).

Gagne does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.   He is not entitled to relief on Ground Two.

**Grounds Three, Four, Five, and Six**

Gagne presents claims of ineffective assistance of trial counsel and illegal sentence in Grounds Three, Four, Five, and Six.   In Ground Three, he states that counsel was ineffective for failing to negotiate a plea agreement with the State and misadvising him with respect to the sentence he would receive upon entering an open plea.   In Ground Four, Gagne asserts that his sentence is illegal because it exceeds the sentencing guidelines without a written reason for departure by the state court.   In Ground Five, Gagne contends that counsel was ineffective for failing to file a petition for writ of prohibition "to stay records of his co-defendant so the contents could be determined." (Dkt. 1, p. 10.)   In Ground Six, Gagne asserts that counsel was ineffective because he was unfamiliar with relevant statutes.

Gagne presented these claims in his postconviction motion.   (Dkt. 9, Ex. 9, pp. 48-54; Ex. 10, pp. 370-384.)   The state court summarily denied them.   (Dkt. 9, Ex.11, pp. 35-

36; Ex. 16, pp. 417-22.)  However, Gagne did not raise these claims on collateral appeal. (Dkt. 9, Ex. 19.)  He was required to do so in order to properly present the claims to the state appellate court.

Florida Rule of Appellate Procedure 9.141(b)(3) governs collateral proceedings when a motion has been granted or denied after an evidentiary hearing was held on one or more claims.  In *Cunningham v. State*, 131 So.3d 793 (Fla. 2d DCA 2012), addressing the application of this Rule, "Florida's Second District Court of Appeal clarified that [between December 2000 and September 2010], where the state post-conviction court had summarily denied some grounds, but denied others after an evidentiary hearing, the Second District would consider the merits, without briefing, of *all* grounds that the state post-conviction court had summarily denied." *Bucklon v. Sec'y, Dep't of Corr.*, 606 Fed. App'x 490, 492 (11th Cir. 2015) (emphasis in original).

However, the Second District Court of Appeal explained that after this time frame, it changed its policy such that "[i]f any ground is resolved after an evidentiary hearing, we require the appellant to process the appeal under rule 9.141(b)(3)." *Cunningham*, 131 So.3d at 795.  Therefore, the court explained, it "no longer conducts an independent review" of summarily denied claims that were not briefed on appeal if any claim was resolved after an evidentiary hearing.  *Id.* As Gagne's collateral brief was filed in 2013, his appeal proceeded under Florida Rule of Appellate Procedure 9.141(b)(3), which requires submission of an initial brief within 30 days of service of the record.  Furthermore, in Florida, an appellant is considered to have abandoned claims that were not briefed with specific argument. *Simmons v. State*, 934 So.2d 1100, 1111 n. 12 (Fla. 2006) (citing *Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997)).

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").   *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."   *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.   *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.   The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.

*Kelley v. Sec'y, Dep't of Corr*., 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picara v. Connor*, 404 U.S. 270, 275-76 (1971).  Because Gagne did not present the claims raised in Grounds Three through Six to the state appellate court, he did not provide the state courts the opportunity to review his federal claims by invoking one complete round of the collateral review process.  Accordingly, his claims are unexhausted.

This renders Gagne's claims procedurally defaulted. The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  Gagne cannot return to state court to file a second, untimely collateral appeal.  *See* Fla. R. App. P. 9.141; Fla. R. Crim. P. 3.850(k).  Therefore, Grounds Three, Four, Five, and Six are procedurally defaulted.  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152, 167-70 (1982).  The petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892;

*Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.   A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.   This exception requires a petitioner's "actual" innocence.   *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).   To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.   *Schlup*, 513 U.S. at 327.   Gagne does not establish the applicability of the cause and prejudice or fundamental miscarriage of justice exception to overcome the procedural default.   Therefore, Grounds Three, Four, Five, and Six are barred from federal habeas review.

Any claims not specifically addressed in this Order have been determined to be without merit.

Accordingly, it is

**ORDERED** that Gagne's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.   The Clerk is directed to enter judgment against Gagne and to close this case.

It is further **ORDERED** that Gagne is not entitled to a certificate of appealability.   A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.   28 U.S.C. § 2253(c)(1).   A district court must first issue a certificate of appealability (COA).   *Id*.   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   *Id*. at § 2253(c)(2).   To make

such a showing, Gagne "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennara v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Gagne has not made this showing.  Finally, because Gagne is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on March 17, 2017.

Charlene Edwards Honeywell
United States District Judge

Copy to:
Raymond Gagne
Counsel of Record